# EXHIBIT A

EXHIBIT A

DECLARATION OF RONALD NELSON

I, Ronald Nelson hereby declare as follows:

1.    I am employed by the United States Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), formerly known as the Immigration and Naturalization Service ("INS").  I am employed as the Senior Adjudications Officer at the San Francisco District Office.  I have been employed by the Department of Homeland Security (formerly Department of Justice), USCIS as an officer since April 21, 2002.  During that time I have worked as a District Adjudications Officer and as a Senior Adjudications Officer.

2.    This declaration is submitted in support of Defendants' motion for summary judgment in the case of Anita Patel v. Alberto Gonzales, C07-2919S on the docket of the United States District Court for the Northern District of California.  This declaration provides a factual summary of the agency's adjudication policy as well as a review of the plaintiff's file.

3.    When a visa petition or other application seeking an immigration benefit on behalf of an alien is filed with USCIS, the agency conducts numerous mandatory criminal and national security background checks.  These checks are conducted both to enhance national security and ensure the integrity of the immigration process.  These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently.  These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and

1

individuals with known links to terrorism.  Pursuant to established agency policy, all

required security checks must be completed prior to adjudication of the application.

4.     The attached Fact Sheet explains the different types of checks that must be completed.

(See Fact Sheet, dated April 25, 2006, a true and correct copy of which is attached

hereto as Exhibit 1).  The checks include the FBI name check, FBI fingerprint check,

and the DHS-managed Interagency Border Inspection System (IBIS).  The records

maintained in the FBI name check process consist of administrative, applicant,

criminal, personnel and other files compiled by law enforcement agencies.  Although

in the majority of FBI name checks no matches are found, some cases involve complex

or highly sensitive information and cannot be resolved quickly.  The IBIS system

contains records and information from more than 20 federal law enforcement and

intelligence agencies including the Central Intelligence Agency (CIA), FBI and other

divisions of the U.S. Department of Justice, the Department of State, DHS Customs

and Border Protection (CBP) and other DHS agencies. It is a multi-agency effort with

a central system that combines information from these various sources and databases to

compile information regarding national security risks, public safety concerns, and

other law enforcement concerns.   IBIS provides, but is not limited to, information

related to persons who are wanted criminals, persons of interest in the context of

national security, and other derogatory information, including adverse immigration

history.  While the results of an IBIS query are usually available immediately, in some

cases information found will require further investigation.  Finally, FBI fingerprint

checks provide information relating to criminal background within the United States.

Results are usually received within days and while the vast majority result in no criminal

2

record, positive results may have a direct bearing on the eligibility of an applicant for the immigration benefit being sought.

5.   As of April 01, 2005, the San Francisco District Office no longer accepted Family-based I-485 applications and related forms (I-130, I-765, I-131) at the local field office. Pursuant to the Direct Mail instructions, these applications are filed at the Lockbox in Chicago, Illinois and then forwarded to the National Benefits Center (NBC) located at Lee's Summit, Missouri for preliminary processing.

6.   The Lockbox is a post office box used to accelerate the collection of applications and petitions, as well as electronically capturing data and images and performing fee receipting and fee deposit.

7.   The I-485 and its related forms filed at the NBC are assigned a "MSC" receipt number (MSC stands for Missouri Service Center, the former name of the NBC).

8.   The I-485 and its related forms are entered into The Interim Case Management Solution (ICMS) - a national web-based fronted-end to the CLAIMS 3 LAN system tracking system that allows data changes as well as adjudicative actions to be performed.

9.   Once USCIS receives an I-485, an A-file is created (or existing file requested), and an electronic record of that application is created.  The generation of an FBI name check is automated - the electronic transmission of an FBI name check request is through FBIQUERY, the FBI repository and tracking system for FBI name check and fingerprint check requests.

10.   Once an acceptable fingerprint (FP) response is received and the FBI name check has been initiated, the case is scheduled for an interview at the local office.  The A-file is then transferred to the appropriate local office.

11. If, upon the completion of the interview at the local office, an application is otherwise approvable, but all the background checks are not completed, the application is placed on a pending background check shelf.

12. FBI name check requests that have been received by the FBI but have not yet been completed are indicated by a notation of "Pending" in FBIQUERY. An FBI name check that has been completed will be indicated by various entries depending on the result, including No Record, Positive Response, etc.

13. Our reports will also identify those I-485 applications that have received a "No Data" or "Error" response in FBIQUERY indicating a problem with transmission of the name check request from USCIS to the FBI. If such a problem is reported, the FBI name check requests will then be initiated a second time and resent manually or electronically to the FBI for a response. In this way USCIS ensures that the FBI has in fact received all requests for name checks.

14. All files on the FBI name check Shelf are audited regularly in order to identify those in which a response from the FBI has been received. This audit is conducted at least every week. In this manner the agency ensures that as FBI responses are received, files are expeditiously released for adjudication. USCIS has followed these procedures in this case. FBIQUERY reports do not provide USCIS with any indication as to what information the FBI may have relating to a particular alien, whether an FBI investigation into the particular alien has been undertaken, or whether there are national security concerns relating to that alien.

15. For most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits.

4

However, due both to the sheer volume of security checks USCIS conducts, and the fact that USCIS must await responses from the FBI or other relevant agencies that conduct some of the required security checks, some delays on individual applications are unavoidable and may be lengthy. Moreover, in some cases a background or security check will reveal that positive (derogatory) information on the subject alien is possessed by some agency other than USCIS without necessarily revealing the substance of that information. In such cases, USCIS works closely with the other law enforcement or intelligence agencies to obtain all available information concerning the positive result in order to properly evaluate its significance. Even where the FBI or a third agency has provided a final response, a case may still be considered pending where the response requires further investigation or review by USCIS or another agency. It is vitally important to thoroughly screen each applicant in order to resolve all concerns of a law enforcement or national security nature before determining that an individual is eligible for an immigration benefit.

16. Prior to December 21, 2006, USCIS accepted the filing of a mandamus lawsuit as a criterion for expediting security checks. However, as of December 21, 2006, that policy has changed and the agency will no longer seek to expedite required security checks based on the filing of a mandamus action.

17. USCIS reports the average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times on the date the information is published. Average processing times fluctuate widely and will sometimes even regress for a specific form type due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons.

Additionally, not every application will require the same level of inquiry. Some may require a more detailed level of review and or investigation from either the USCIS or other agencies for a number of reasons ranging from the alien's eligibility for the benefit sought to national security concerns. Accordingly, even when it appears that the adjudication of a particular application is outside the average processing time, this does not establish that the delay is unreasonable or even due to factors within the control of USCIS.

18.    The FBI has an established process of processing FBI name check requests from USCIS chronologically based on the date the request is forwarded. As stated above, certain requests can be expedited if they meet specific expedite criteria. However, it is important to note that whenever a particular application or petition receives expedited processing and is moved up in the queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. There is no statutory or regulatory time limit for the adjudication of I-485s. Moreover, an alien who has applied for adjustment of status may apply for and obtain employment authorization for the entire time his or her application is pending. Most applicants for adjustment of status may also apply for and obtain advance parole to enable them to travel abroad during the pendency of their application. Thus, applicants for adjustment of status are not as adversely affected by delays in the adjudication of their applications as are aliens filing for other immigration benefits.

19.    In my capacity as a Senior Adjudications Officer of USCIS, I have access to the official files and records of the USCIS. I have reviewed the system records for plaintiff Anita Patel, A96 542 186. The record reflects that on June 3, 2005, plaintiff Anita Patel filed

an application for adjustment of status on Form I-485. Plaintiff Anita Patel applied for adjustment of status under Section 245 of the Immigration and Nationality Act ("INA"), based on her marriage to Anand Paul Singh Judge, a United States citizen. A Petition for Alien Relative, Form I-130, filed by Anand Paul Singh Judge, was approved on December 13, 2005. To date, that application remains pending the completion of security checks. Once the required security checks are completed, the plaintiff's application will be adjudicated.

20. On October 24, 2007 an expedited FBI name check request was submitted to the USCIS Western Regional Director. The expedited FBI name check request was approved and forwarded to the FBI on October 24, 2007, but the FBI name check remains pending as of today's date. For this reason the USCIS is unable to adjudicate plaintiff's I-485 application for adjustment of status until such time when all security checks are complete.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of November, 2007 at San Francisco, California.

Ronald Nelson

Senior Adjudications Officer

EXHIBIT 1



*Press Office*
**U.S. Department of Homeland Security**

**U.S. Citizenship and Immigration Services**

April 25, 2006

# Fact Sheet

## Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

Immigration Security Checks—How and Why the Process Works

---

**How Immigration Security Checks Work**

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check**— IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check**—FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks**—FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

several years to resolve.  Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided.  USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.

EXHIBIT B

*Office of Communications*
**U.S. Department of Homeland Security**



**U.S. Citizenship and Immigration Services**

February 20, 2007

# USCIS Update

### USCIS CLARIFIES CRITERIA TO EXPEDITE FBI NAME CHECK
*Federal Litigation Removed as Sole Basis to Expedite Check*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

USCIS may continue to request an expedited FBI name check if the case meets one of the other approved criteria, including:

1. Military deployment,
2. Age-out cases not covered under the *Child Status Protection Act*, and applications affected by sunset provisions such as diversity visas,
3. Significant and compelling reasons, such as critical medical conditions, and
4. Loss of social security benefits or other subsistence at the discretion of the USCIS District Director.

The FBI name check is an invaluable part of the security screening process, ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens. USCIS also requests an FBI name check to screen out people who seek immigration benefits improperly or fraudulently and ensure that only eligible applicants receive benefits.

Information about the FBI name check is available on the USCIS website at http://www.uscis.gov or by calling the USCIS National Customer Service Center toll free at 1-800-375-5283.

–USCIS –

On March 1, 2003, U.S Citizenship and Immigration Services became one of three legacy INS components to join the U.S. Department of Homeland Security.   USCIS is charged with fundamentally transforming and improving the delivery of immigration and citizenship services,  while enhancing our nation's security.

# EXHIBIT B

1

2

3

4

5

6

7

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  SHAHRAM MAHDAVI,                                    CASE NO. 06cv2716 DMS (NLS)

12                                  Plaintiff,          **ORDER DENYING PLAINTIFF'S**
                    vs.                                 **MOTION FOR SUMMARY**
13                                                      **JUDGMENT AND GRANTING**
                                                        **DEFENDANTS' MOTION FOR**
14  MICHAEL CHERTOFF, SECRETARY, et                     **SUMMARY JUDGMENT**
    al.,
15                                                      [Docket Nos. 17, 21]
                                  Defendants.
16

17          This case comes before the Court on cross-motions for summary judgment. Plaintiff filed his

18  motion on August 16, 2007, Defendants filed their opposition on September 7, 2007, and Plaintiff filed

19  his reply on September 14, 2007. Thereafter, on September 21, 2007, Defendants filed their own

20  motion for summary judgement. Plaintiff filed his opposition to the motion on October 3, 2007, and

21  Defendants filed their reply on October 19, 2007. After thoroughly reviewing the parties' briefs, the

22  Court finds this matter suitable for judgment without oral argument. For the reasons set forth below,

23  the Court denies Plaintiff's motion and grants Defendants' motion.

24                                              **I.**

25                                  **FACTUAL BACKGROUND**

26          On September 8, 2005, Plaintiff, a citizen of Iran, submitted an application for adjustment of

27  status ("Form I-485") to the California Service Center ("CSC") of the Department of Homeland

28  Security ("DHS") Citizenship and Immigration Services Division ("USCIS"). (Mem. of P & A in

- 1 -                                             06cv2716

1   Supp. of Defs' Mot. for Summ. J., Ex. A at 1.) The purpose of this application is to obtain lawful

2   permanent resident status for Plaintiff. (*Id.* at 2.) Plaintiff's application has since been transferred to

3   the Nebraska Service Center in Lincoln, Nebraska, where it remains pending completion of certain

4   background and security checks. (*Id.* at 1-2.) Among the processes that must be completed are

5   records checks against DHS's own immigration systems, fingerprint checks performed by the Federal

6   Bureau of Investigation ("FBI"), checks against the DHS-managed Interagency Border Inspection

7   System ("IBIS"), and a name check conducted by the FBI. (*Id.* at 3-4.) The purpose of these

8   screening processes is to ensure that applicants do not pose a threat to national security or public

9   safety. (*Id.* at 4-5.) In certain cases, these background checks have revealed important information

10   that the traditional DHS measures cannot. (*Id.* at 5.) Plaintiff has been fingerprinted twice, and his

11   preliminary IBIS check is complete. (*Id.* at 5-6.) His name check request was received by the FBI

12   on September 16, 2005, but remains pending. (*Id.* at 6.) The status of his DHS records check is

13   unknown. Although there is a procedure for expediting processing of certain applications, Plaintiff

14   has not applied for that procedure (*Id.* at 7-9.)

15                                  **II.**

16                             **DISCUSSION**

17       Plaintiff moves for summary judgment on the ground that Defendants' delay in processing his

18   application is unreasonable. Defendants deny they are delaying adjudication of Plaintiff's application,

19   and assert that even if there is some delay, it is not unreasonable.

20     **A.**    **Motion for Summary Judgment**

21       Summary judgment is appropriate if there is no genuine issue as to any material fact, and the

22   moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party has

23   the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*,

24   398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or

25   other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex*

26   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome

27   of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v.*

28   *Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

06cv2716

1    The burden then shifts to the opposing party to show that summary judgment is not

2  appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all

3  justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

4  (1986). However, to avoid summary judgment, the opposing party cannot rely solely on conclusory

5  allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific

6  facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to

7  establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

8  U.S. 574, 586 (1986).

9    **B.    Relief in the Nature of Mandamus**

10    "[T]he writ of mandamus is an extraordinary remedy, to be reserved for extraordinary

11  situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988). However,

12  while operating under this guideline, courts must follow the mandate of the Administrative Procedure

13  Act ("APA") and "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §

14  706(1) (2000). When determining the validity of APA relief, the Ninth Circuit evaluates the so-called

15  "*TRAC*" factors found in *Telecomm. Research & Action Ctr. v. Fed. Commc'n Comm'n*, 750 F.2d 70,

16  79-80 (D.C. Cir. 1984). *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997);

17  *Ibrahim v. Chertoff*, No. 06cv2071-L, 2007 WL 1558521, at *6 (S.D. Cal. May 27, 2007); *see also*

18  *Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001). The *TRAC* factors include:

19    (1) the time agencies take to make decisions must be governed by a 'rule of reason'[;]
    (2) where Congress has provided a timetable or other indication of the speed with
20    which it expects the agency to proceed in the enabling statute, that statutory scheme
    may supply content for this rule of reason [;] (3) delays that might be reasonable in the
21    sphere of economic regulation are less tolerable when human health and welfare are
    at stake [;] (4) the court should consider the effect of expediting delayed action on
22    agency activities of a higher or competing priority[;] (5) the court should also take into
    account the nature and extent of the interests prejudiced by the delay[;] and (6) the
23    court need not 'find any impropriety lurking behind agency lassitude in order to hold
    that agency action is unreasonably delayed.'
24

25  *TRAC*, 750 F.2d at 80 (internal citations omitted). Plaintiff has failed to address these factors in both

26  his own motion and his opposition to Defendants' motion. However, Defendants assert they control

27  resolution of this case, and warrant summary judgment in their favor.

28  / / /

1       **1.    Governed by a rule of reason**

2               While Defendants have explained their process for evaluating I-485 Forms, they do not

3       identify a precise time limit for adjudication.  Instead, they simply guarantee that "no eligible alien

4       [will] wait longer than is reasonably necessary to receive a decision." (Mem. of P & A in Supp. of

5       Ds' Motion for Summ. J., Ex. A at 6.)  Although ambiguous, this time frame is indeed governed by

6       a rule of reason: the uncertain duration of the integral background checks.  "The government's

7       interests in the administration of its immigration laws. . .are. . .considerable," and Defendants have

8       proffered compelling information related to national security, public safety, and the thorough

9       screening of applicants for adjustment of status. *Walters v. Reno*, 145 F.3d 1032, 1043 (9th Cir. 1998);

10      (Mem. of P & A in Supp. of Defs' Mot. for Summ. J., Ex. A at 4-6.)  As a result of the necessity for

11      thorough checks - combined with the fact that "some cases legitimately take months or even several

12      years to resolve" - Defendants' unwillingness to impose an upper time limit on processing adjustment

13      applications is reasonable. (Mem. of P & A in Supp. of Defs' Mot. for Summ. J., Ex. A at 12-13.)

14      Furthermore, Defendants are processing outstanding background checks as quickly as possible, and

15      are seeking means of improving and quickening their systems. (*Id.* at 6.)  Thus, the open-ended

16      processing time frame is a reasonable rule, so long as Defendants continue to complete the necessary

17      background checks as rapidly and efficiently as their resources allow.

18      **2.    Congressional provision of timetable**

19              This factor is inapplicable because "Congress has not imposed a timetable for application

20      processing." *Ibrahim*, 2007 WL 1558521 at *7.

21      **3.    Delays affecting health and human welfare**

22              The context for this factor is grounded in *Blankenship v. Sec'y of HEW*, 587 F.2d 329, 334 (6th

23      Cir. 1978).  In this case, most individuals pursuing relief were "destitute and seek[ing] benefits for the

24      necessities of life." *Id.*  The court found this condition compelling because of the substantial burden

25      upon basic health and human welfare that further delays could cause.

26              In this case, Plaintiff has not presented any information indicating that delays in the processing

27      of his application negatively affect his health.  Plaintiff has stated that in order to work in the United

28      States as an alien and travel abroad, he must annually spend $665 for the appropriate permits. (P's

- 4 -

1    Mem. of P & A. in Opp'n. to Ds' Mot. for Summ. J., at 5.) Presumably, this charge would not apply

2    if Plaintiff received permanent resident status. Thus, the delay in adjudicating Plaintiff's I-485 - the

3    approval of which is not even guaranteed - could conceivably be affecting his finances by $665 per

4    year. However, Plaintiff has given no indication that he is either destitute or seeking life's necessities,

5    or that paying $665 annually would place him in such a position. Given the contextual background

6    of this *TRAC* factor, the Court finds Plaintiff's health and human welfare has not been impaired by

7    the delay.

8              **4.    Effect of expediting on agency activities**

9              Plaintiff has not addressed this issue. Defendants emphasize that "whenever a particular

10   application. . .receives expedited processing and is moved up in the adjudications queue, it is at the

11   expense of those still unadjudicated. . .applications that bear an earlier filing date." (Mem. of P & A

12   in Supp. of Ds' Mot. for Summ. J., Ex. A at 8-9.) Further, the FBI background check system is

13   experiencing a backlog of these expedited requests, thus limiting the number of expedited checks that

14   can be processed on a weekly basis. (*Id.* at 9.) In this case, the effect of expediting Plaintiff's Form

15   I-485 is fairly obvious: assuming FBI resources remain constant, no procedural net gain will result and

16   other applications "of a higher or competing priority" will be delayed. *TRAC*, 750 F.2d at 80. As a

17   result, this factor weighs in favor of Defendants.

18             **5.    Nature and extent of interests prejudiced**

19             In all of his filings with this Court, Plaintiff has devoted one sentence to a single interest

20   prejudiced by this delay: the $665 expense required for traveling and working permits. While this

21   amount is not insubstantial, Plaintiff has provided no further detail as to how these payments prejudice

22   his finances. Instead, he offers a merely conclusory remark: "[h]e is being damaged by not having

23   permanent residence in this country." (P's Memo. of P & A in Opp. to Ds' Mot. for Summ. J., at 5.)

24   As a result, this factor weighs only slightly in favor of Plaintiff.

25             **6.    Existence or absence of impropriety**

26             Nothing in the record indicates the existence of any impropriety on Defendants' part. Rather,

27   both sides seem in agreement that the only impediment to adjudication of Plaintiff's application is the

28   pending background check. To this end, Defendants affirm they "will continue to perform any

                                             - 5 -                              06cv2716

1    outstanding background and security checks as expeditiously as possible." (Mem. of P & A in Supp.

2    of Ds' Mot. for Summ. J., Ex. A at 6.)   While this lack of impropriety would not excuse an

3    unreasonable delay, it demonstrates Defendants' good faith in operating as efficiently as possible

4    under their budgetary and temporal constraints.

### III.

### CONCLUSION

7         After considering the six *TRAC* factors, the Court finds Defendants have not unreasonably

8    delayed the processing of Plaintiff's Form I-485.  Accordingly, the Court DENIES Plaintiff's Motion

9    for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment.

10   **IT IS SO ORDERED**.

11   DATED:  October 29, 2007

12

13                        HON. DANA M. SABRAW
                     United States District Judge

- 6 -

06cv2716